UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERTA J. HESS *ex rel.*<br>UNITED STATES OF AMERICA,<br>    Plaintiff,<br>  v.<br>THE NEBRASKA MEDICAL CENTER,<br> a Nebraska nonprofit corporation,<br>    Defendant. | Case No. 17-340<br><br>**AMENDED COMPLAINT**<br><br>*JURY TRIAL DEMANDED*<br><br>Location: Omaha, Nebraska |

Roberta J. Hess ("Ms. Hess") files this Complaint against Nebraska Medical Center for violations of Title VII, 42 U.S.C. § 2000-2, *et seq.*, and the Age Discrimination in Employment Act, ("ADEA), 29 U.S.C. § 621, *et seq.* Ms. Hess alleges:

**INTRODUCTION**

1. In September 2015, Ms. Robbie Hess learned from staff assistant, Andrea Lambiasi ("Lambiasi"), that NMC cardiologist Dr. Akkad had given both Lambiasi and sonographer Keith Rogers his electronic password. This allowed each of them to sign off on medical procedures and tests supposedly conducted by Dr. Akkad and his office to be submitted for bulling purposes to the Center for Medicare Services.

2. The Center for Medicare and Medicaid Services "CMS" is a federal agency within the United States Department of Health and Human Services. Medicare payments are submitted on CMS Form 1500.

3. When Ms. Hess learned of this illegal practice, she and another sonographer, Joan Olson ("Olson"), reported the matter to NMC Medical Director Tom Porter ("Porter"). Porter directed Ms. Hess and Olson to report the matter to Ms. Hess' manager, Melissa Christian ("Christian"). She did so. Christian informed Ms. Hess the NMC Human Relations department would investigate the echocardiography department. Ms. Hess was not told of the results of the investigation.

1

4. Immediately after that investigation was initiated, Christian summoned Ms. Hess to her office at least weekly to confront her about trivial matters, unrelated to the investigation. This practice continued throughout the remainder of Ms. Hess' employment. Ms. Hess had never been subjected to such hyper-monitoring until after she reported Dr. Akkad's practice of allowing staff members to forge his electronic signature on submissions to the CMS for payment from Medicare and Medicaid.

5. The monitoring continued despite the fact NMC evaluated Ms. Hess' performance as "exceeding expectations" for the entire period she was at NMC, which started in October 1982.

6. Ms. Hess brought the false submissions to NMC's attention. NMC purportedly investigated but Ms. Hess is only aware of one result: NMC fired Ms. Hess. She was fired in retaliation for her conscientious actions in reporting and objecting to false signatures staff members were putting on official document on paperwork required by Medicare and/or Medicaid.

7. NMC's actions violated both state and federal law in the manner set forth below.

**Claim I**     Age Discrimination

**Claim II**    Sex Discrimination and

**Claim III**   Defamation

## JURISDICTION & VENUE

8. This Complaint is based on Title VII , 42 U.S.C. §20003-2 *et seq.* the ADEA, 29 U.S.C. § 623 *et seq.* The Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

9. This Court has supplemental jurisdiction of Ms. Hess's Nebraska state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b), and 31 USC §3732(a). Defendant NMC does business at 987400 Nebraska Medical Center, Omaha, NE 68198-7400. The acts proscribed by the Nebraska FEP, §§48-1004 and 1114, were orchestrated

from, planned in, and carried out in this District.

## PARTIES

11.     Robbie J. Hess, now is a resident of Atlanta, Georgia. At all times relevant to this Complaint, she was a resident of Omaha, Nebraska. She is a registered nurse. She was a staff nurse at the time she was terminated by NMC on March 3, 2016. Ms. Hess dual-filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Opportunity Commission ("EEOC") and has obtained a Right to Sue letter.[1]

12.     NMC is now, and at all relevant times was, a Nebraska nonprofit domestic corporation. NMC does business at 987400 Nebraska Medical Center, Omaha, NE 68198-7400. NMC receives funding from the United States federal government through Medicare and Medicaid reimbursement.

13.     NMC provides cardiology services in the greater Omaha, Nebraska area. NMC provides inpatient care, surgery, clinics, and emergency services. Dr. Akkad provides services and treats conditions including aortic conditions, aortic stenosis, heart attack, heart failure, heart imaging diagnostics, heart rehabilitation, heart valve care, heart and vascular, high blood pressure, minimally invasive surgery, mitral valve regurgitation, pulmonary hypertension, and vascular care.[2]

## BACKGROUND FACTS

14.     Ms. Hess started working for NMC in October 1982. She was born on November 18, 1957, making her 59 years old. While she was employed at NMC, Ms. Hess was hardworking, dedicated, and well-respected. She had many years more experience than her co-RNs, including twenty years of experience as an operating room ("OR") nurse.

---

[1] Exhibit A to this Complaint is a true and correct copy of Ms. Hess's Right to Sue Letter.
[2] https://www.nebraskamed.com/doctors/haysam-akkad

3

15. The medical providers for whom Ms. Hess worked gave her the highest praise.

> closely. In my opinion, she was one of the best clinical nurses with whom I have had the pleasure of working in my three decades as a surgeon. Her attention to detail was superior, her devotion to her patients exemplary, and her instincts and intelligence often proved life-saving. As her career progressed, her interactions with new nurses revealed outstanding leadership and teaching skills, both of which she has cultivated to great advantage to the institution.

(Letter from Byers W. Shaw Jr., MD FACS 3/16/2016, a true and correct copy is attached as Exhibit B and incorporated here by this reference.)

16. Despite years of outstanding work resulting in the highest praise and recommendations, Ms. Hess was targeted by a new supervisor, Melissa Christian. Ms. Christian, a staff nurse in her 30's, was nearly 30 years younger than Ms. Hess. Christian was critical of Ms. Hess' work from the beginning of her supervisory duties over Ms. Hess.

17. One of Christian's first acts was to strip Ms. Hess of all departmental responsibilities and committee memberships. Christian informed Ms. Hess she no longer was allowed to work at NMC's Oakview location. Ms. Hess was shocked, as she was responsible for putting in place the nursing protocols for NMC's Oakview nuclear program. When Ms. Hess asked Christian "why" she said she would have to find out.

18. On another occasion, Christian told Ms. Hess, while she was in a patient room, that Dr. Akkad had stated he did not want Ms. Hess to care for his patient. When Ms. Hess asked why, Christian said she would need to find out. Christian returned hours later and reported to Ms. Hess she could, in fact, care for Dr. Akkad's patients.

19. During the following three (3) weeks, Ms. Hess asked Christian for the rationale behind the ban at Oakview. Ms. Hess' inquiries resulted in Christian giving Ms. Hess a corrective action. According to Christian, Dr. Gangahar, Dr. Akkad, and a "mystery patient" complained about Ms. Hess.

20. The only explanation of these complaints related to a notation by Ms. Hess on one

of Dr. Gangaher's reports, which was in Ms. Hess' work queue.

   a. In February 2016, Ms. Hess was assigned a worksheet with medical information from Dr. Gangahar to be input to the NMC "Muse" system. The worksheet is not part of a patient's medical record. It is akin to scratch paper, that is used at a later time, when personnel enter the information into the electronic medical record. The electronic "Muse" system associates a barcode with each official document that is entered into a patient's file.

   b. The specific document at issue in Ms. Hess' case is a treadmill stress test, which typically is supervised by a cardiology fellow. A staff physician then reviews and signs the test. The worksheet is given to the secretary (or staff assistant) who enters the information into the patient's electronic medical record. The worksheet does not have a barcode; it is shredded after the input is completed.

   c. This particular worksheet had been given to the secretary without the name of the staff physician. The secretary approached Ms. Hess and asked who the physician was for the test.

   d. Ms., Hess told her and quickly wrote the physician's name on the worksheet. Ms. Hess immediately realized the physician needed to sign the worksheet, even though Ms. Hess had written the physician's name (in her own handwriting) on the worksheet. Ms. Hess kept the worksheet, until she could get the physician's signature. Ms. Hess did not give the worksheet back to the secretary.

   e. Unbeknownst to Ms. Hess, Lambiasi snatched the worksheet from Ms. Hess' desk and provided it to management, including Ms. Hess' supervisor. When Ms. Hess was in the manager's office a few days later, Christian confronted her. Christian accused Ms. Hess of forging Dr. Gangaher's signature.

5

   Significantly, Christian showed Ms. Hess a worksheet that did not have a bar code. Unless a document has a barcode, it is not an "official" document that is part of a patient's electronic medical records.

f. Ms. Hess responded truthfully to Christian, explained the circumstances, and stated she wanted to correct the error. Christian refused.

g. A few days later, Ms. Hess approached Christian again and told Cristian she had the right to manually correct the "error." Christian claimed not to know where the worksheet was, and told Ms. Hess, "It's too late."

h. Twenty minutes later, Christian contacted Ms. Hess, summoned her to the manager's office, and terminated her.

## CLAIM I
## VIOLATION OF TITLE VII AND NEBRASKA FEPA
(Sex Discrimination)

21. Plaintiff restates paragraphs 1 through 21, as if fully set forth here.

22. Title VII and the Nebraska Fair Employment Practices Act provide parallel prohibitions on sex discrimination.

   a. NMC violated the state and federal prohibitions on sex discrimination. According to applicable statutes:

   It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex[.]

   42 U.S.C. § 2002e-2. Neb. Rev. Stat. § 1104.

   b. The foregoing state and federal statues protect Ms. Hess: (1) she is female; (2) she was more than qualified to her job, (3) NMC terminated her, and (4) she was not treated the same as other similarly situated females, and she was replaced by a significantly younger male employee who was not as qualified.

6

      i. NMC did not terminate the male sonographers who utilized Dr. Akkad's password protected signature to sign off on his records and results.

      ii. A younger male replaced Ms. Hess, Ryan LNU who had many years less experience than did she.

  c. NMC had no legitimate non-discriminatory reason warranting Ms. Hess' discharge.

      i. Ms. Hess had reviews that showed she consistently met and exceeded expectations.

      ii. Ms. Hess was cleared of any wrongdoing regarding the claimed forgery of a physician's signature when the investigation showed the documents was not officially a part of the NMC records.

  d. The only reasons offered constitute pretext and demonstrate how differently Ms. Hess was treated from others in Dr. Akkad's office.

WHEREFORE NMC's discrimination against Ms. Hess has caused her damages in an amount to be determined at trial.

## CLAIM II
### VIOLATION OF TITLE VII AND NEBRASKA FEPA
**(Age Discrimination)**

23. Plaintiff restates paragraphs 1 through 22, as if fully set forth here.

24. NMC violated the state and federal prohibitions on age discrimination. According to applicable statutes:

> (1) It shall be an unlawful employment practice for an employer:
>
> (a) To refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to the employee's terms, conditions, or privileges of employment, otherwise lawful, because of such individual's age, when the reasonable demands of the position do not require such an age distinction[.]

7

Neb. Rev. Stat. § 488-1004(1); *see also* 29 U.S.C. § 623.

    a. Both Nebraska's Fair Employment Practices Act and the ADEA protect Ms. Hess: (1) She is over 40 years old in the protected age group; (2) She was qualified for and performing the essential functions of her job; (3) She was terminated; and (4) She was replaced by a significantly younger male who had less experience than she.

        i. Ms. Hess is 59 years old. She has performed her job at levels exceeding expectations for more than 30 years.

        ii. Younger individuals supervised Ms. Hess, including Christian, and worked with several other younger staff members, including Lambiasi, Nicole Matheson, and Michaela Newman.

        iii. Ms. Hess was treated differently than younger employees. Departmental meetings were scheduled every Thursday, which was Ms. Hess' day off. Newman excluded Ms. Hess from meetings by holding meetings while Ms. Hess was tending to patients. Newman publicly stated to other nurses in the department that she refused to talk to Ms. Hess unless another witness was present. While Ms. Hess was tending to a patient, Newman informed Ms. Hess that Dr. Akkad did not want her tending his patients. Shortly thereafter, Newman recanted and said it was okay for Ms. Hess to continue caring for Dr. Akkad's patients. When Newman was manager, the department voted for members of a United Based Council. Two weeks passed when Ms. Hess learned she received the most votes from her peers and was to be president of the committee. Newman however, went to the Nurse Practice Committee to get

permission to remove Ms. Hess, Newman stated she did not want Ms. Hess on the committee because she did not trust her. Newman refused to explain why.

    iv. Christian also treated Ms. Hess different than other nurses in the department.  When Christian started, she stripped Ms. Hess of all responsibilities, committee memberships and the opportunity to work at Oakview.  Ms. Hess received a corrective action for stating she "feels like the only nurse here" and that she "would just do it like I always do."  Liz Wright, a sonographer, announced to a full workroom that "[another nurse] doesn't know her head from her asshole."  Wright publicly referred to Dr. Akkad as "that bastard."  She also stated repeatedly, aloud, "I need a new fucking job."  Ms. Wright was never given a warning or a corrective action for her comments.

b. NMC had no reason whatsoever to validate its discriminatory treatment of Ms. Hess, let alone a legitimate non-discriminatory reason.

c. The only rationale for Ms. Hess's termination was based on age and jealousy of a few younger nurses who were not paid as much.

WHEREFORE NMC's discrimination against Ms. Hess has caused her damages in an amount to be determined at trial.

## **CLAIM VI**

### **(Defamation)**

25. Ms. Hess restates paragraphs 1 through 24, as if fully set forth here.

26. A claim of defamation requires:

    (1) A false and defamatory statement concerning the plaintiff;

    (2) An unprivileged publication to a third party;

    (3) Fault amounting to at least negligence on the part of the publisher; and

    (4) Either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Nolan v. Campbell*, 13 Neb. App. 212, 218, 690 N.W.2d 638, 647 (2004).

27. Defamation is slanderous per se if the speaker "falsely impute[s] *** unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade ***." *Matheson v. Del Stork*, 239 Neb. 547, 553, 477 N.W.2d 156, 160 (1991).

28. In this case, NMC defamed Ms. Hess by stating that her termination was due to her unfitness to do her job. NMC's statements forced Ms. Hess to self-report to the Nursing Board NMC's claim that she forged a physician's signature. Ms. Hess attempted to challenge NMC's accusations in several internal appeals at NMC, to no avail. When Ms. Hess and her family moved to Georgia, she applied for her nursing license there. She was required to provide additional documentation explaining the situation and her ability to practice nursing was delayed for several months until Georgia conducted its investigation and ultimately cleared Ms. Hess of any wrongdoing.

WHEREFORE NMC's defamation of Ms. Hess has caused her damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Ms. Hess respectfully requests that this Court assume jurisdiction as to all counts and grant such relief as this Court deems appropriate, including such award as appropriate pursuant to applicable Federal law to make the Ms. Hess whole; including back pay; interest on back pay awarded, punitive damages for the illegal conduct, litigation costs, and reasonable attorney's fees, and further relief as this Court deems equitable and just

        RESPECTFULLY SUBMITTED,
        Roberta J. Hess,

By:   /s/Terry A. White
      Terry A. White, #18282
      Alexis S. Mullaney #25908
      CARLSON & BURNETT LLP
      17525 Arbor Street
      Omaha, NE 68330
      Direct (402) 682-8006
      Terry@Carlsonburnett.coM
      Alexis@Carlsonburnett.com
      *Attorneys for Plaintiff Roberta Hess*

.

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Roberta J. Hess
507 S 85th St
Omaha, NE 68114

From: St. Louis District Office
1222 Spruce Street
Room 8.100
Saint Louis, MO 63103

**EXHIBIT A**

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2017-00083 | Joseph J. Wilson, State & Local Program Manager | (314) 539-7816 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

/s/ James R. Neely, Jr.
James R. Neely, Jr.
Director

September 14, 2017
(Date Mailed)

Enclosures(s)

cc:
THE NEBRASKA MEDICAL CENTER
c/o Jessica Kallstrom-Schreckeng
JACKSON LEWIS
10050 Regency Cir, Ste 400
Omaha, NE 68114

Alexis Mullaney
CARLSON & BURNETT
17525 Arbor St
Omaha, NE 68130



**University of Nebraska Medical Center**

COLLEGE OF MEDICINE
Department of Surgery

March 16, 2016

**EXHIBIT B**

To Whom It May Concern:

I am writing to support the application of Roberta Hess. I have known her for more than 25 years, beginning when I led the solid organ transplant program at the University of Nebraska Medical Center and she was a nurse in the ICU. She was often involved in the care of our patients and during that time, I was able to observe her performance closely. In my opinion, she was one of the best clinical nurses with whom I have had the pleasure of working in my three decades as a surgeon. Her attention to detail was superior, her devotion to her patients exemplary, and her instincts and intelligence often proved life-saving. As her career progressed, her interactions with new nurses revealed outstanding leadership and teaching skills, both of which she has cultivated to great advantage to the institution.

Beyond her professionalism and expertise, Roberta is also a genuinely warm and friendly person. I found her calm yet effective during crises, full of good humor when appropriate and just plain likable all of the time.

I recommend her for your consideration with my highest enthusiasm and with no reservations.

Sincerely,

Byers W Shaw Jr, MD, FACS